UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOARD OF TRUSTEES OF THE
PLUMBERS, PIPEFITTERS &
MECHANICAL EQUIPMENT SERVICE,
LOCAL UNION NO. 392 PENSION FUND, et al.,   Case No. 1:11-cv-502

       Plaintiffs,   Weber, J.
           Bowman, M.J.
  v.

GM MECHANICAL, INC., et al.,

       Defendants.

**REPORT AND RECOMMENDATION**

Plaintiffs have moved for entry of summary judgment against Defendants GM Mechanical, Inc. ("GM Mechanical") and Gerald Miller ("Miller") in this ERISA case. Defendants have filed a memorandum in opposition, to which Plaintiffs have filed a reply. The motion has been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. (Doc. 28). For the reasons stated below, I now recommend that the motion be granted.

    **II.**  **Analysis**

    **A.**  **Standard of Review**

On summary judgment, a court must determine whether there is any genuine issue as to any material fact in dispute. *See* Rule 56(c), Fed. R. Civ. P. In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks

1

omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.* In this case, summary judgment should be granted to the Plaintiffs based upon the uncontested evidence filed in support of their motion.

**B. Plaintiff's Motion**

**1. Undisputed Background Facts**

GM Mechanical, Inc. is an employer that agreed to be bound by the provisions of the Collective Bargaining Agreement ("CBA") between the Plumbers, Pipefitters & MES, Local Union No. 392 U.A. ("Union") and the Mechanical Contractors Association. Pursuant to the referenced CBA, GM Mechanical is required to make monthly reports ("Contribution Reports") of hours worked by covered employees, and to pay monthly contributions to certain funds, described categorically as "the Trust Funds," the "Education Fund," and the "Industry Fund" (hereinafter the "Local 392 Funds"). The same CBA states that an employer that fails to submit monthly Contribution Reports and contributions to the referenced Funds on a timely basis is responsible to pay liquidated damages equal to 8% of the unpaid amount, plus reasonable attorney's fees and costs associated with enforcement.

In March 2012, the two named Defendants herein both agreed to enter into a Settlement Agreement in order to pay off $89,928.93 in unpaid contributions, liquidated

damages, and attorney's fees that all parties agreed were owed by the Defendants to the Plaintiffs in this case. (Doc. 41-5).  The Settlement Agreement encompassed payments for the months of September, October, November, and December 2011 on two construction projects known as the Westwood School and Mt. Washington School projects.  Through that Settlement Agreement, Miller agreed to be "personally liable for all of the obligations of [GM Mechanical] called for in this Agreement, including all ongoing contributions that shall become due and owing during the duration of this Agreement, liquidated damages, interest, attorney's fees, and audit deficiencies revealed during the duration of [the Settlement Agreement]."  (*Id.* at ¶6).  Both Defendants agreed to pay off their settlement obligation through twelve monthly installment payments.  Through October 2012, Defendants timely submitted payment of the first seven (7) installment payments.  Subsequently, however, they failed to remit the final five (5) payments.

Based on the unpaid five installment payments, as reduced by the sum of $15,000.00 recovered from a separate settlement with the Hudson Insurance Company, Plaintiffs assert that Defendants continue to owe $14,684.44 in contributions, as well as $6,906.59 in liquidated damages, and $2,062.32 in attorney's fees from the breach of the Settlement Agreement.

In addition to their failure to complete the installment payments under the Settlement Agreement, Defendants failed to submit payments of the March, April, May and June 2013 fringe benefit contributions in the aggregate amount of $55,312.81 for labor performed on a third construction project known as the Maplestreet Station Dining & Residence Hall at Miami University.  Plaintiffs also allege that Defendants' failure to submit timely payment of monthly contributions to the Local 392 Funds has resulted in a

total liquidated damages amount of $12,535.68 under the CBA, for the period beginning September 2012 through May 2013.  Last, Plaintiffs represent that they have expended $12,192.11 in attorney's fees and costs which are payable under the CBA.

Plaintiffs seek judgment as a matter of law.  It is undisputed that the two named Defendants, GM Mechanical, Inc. and Gerald Miller, are bound by both the referenced Settlement Agreement and the Collective Bargaining Agreement, and have breached the terms of those two Agreements.  Pursuant to 29 U.S.C. §1132(g)(2), when a Court enters judgment in favor an ERISA plan, the Court shall award:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of –

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law….;

(D) reasonable attorney's fees and costs….; and

(E) such other legal or equitable relief as the court deems appropriate.

*Id.*; *see also Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1990)(stating that the remedies provided by §1132(g)(2), including attorney's fees, are mandatory).

Through June 30, 2013, it is undisputed that the two Defendants owe Plaintiffs the sum of $69,997.25, representing unpaid contributions to the Local 392 Funds.  That amount is comprised of $14,684.44 in unpaid contributions under the Settlement

Agreement as of July 30, 2013, plus $55,312.81 in unpaid contributions for the months of March, April, May and June 2013.

In addition to the amounts owed in unpaid contributions under the Settlement Agreement and CBA, the Defendants owe liquidated damages in the total amount of $19,441.27, representing an eight percent (8%) assessment of such damages as set forth in both the CBA ($12,535.68) and the Settlement Agreement ($6,905.59).  *See Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d at 388 (liquidated damages are also mandatory).   Last, Defendants are liable for attorney's fees and costs in the amount of $14, 354.43, comprised of $2,062.32 remaining under the Settlement Agreement, plus $12,192.11 under the CBA as a result of this action.

**2.  The Mitigation Issue**

Critically for the purposes of the pending motion, Defendants do not dispute that they have breached both the CBA and the Settlement Agreement.   Further, Defendants do not dispute any of the precise dollar figures calculated by Plaintiffs for the breach of the two Agreements, including the amounts calculated for liquidated damages or attorney's fees.

Instead, Defendants' only argument in opposition is that this Court should not grant Plaintiffs' motion because Plaintiffs failed to mitigate their damages.  According to Defendants, Plaintiffs could have mitigated their damages by accepting payment from two alternate sources.  First, Defendants assert that they asked Plaintiffs to seek payment in full from Defendants' performance bonds, but that Local 392 Funds refused to do so until it was too late to recover full payment.   Second, Defendants contend that they

previously tendered to Plaintiffs the sum of $83,445.74, by virtue of offering to assign to Plaintiffs a debt allegedly owed to Defendants by a third-party Defendant, Plumbers, Pipefitters and Mechanical Equipment Union No. 392 ("the Union"). Plaintiffs refused to accept that assignment of debt.

In their reply memorandum, Plaintiffs dispute the legal proposition that a failure to mitigate damages can ever support denial of a motion for summary judgment for the type of claims presented here. Plaintiffs point out that in the sole case cited by Defendants involving an ERISA action for delinquent contributions, *Iron Workers' Local 25 Pension Fund v. Klassic Servs.*, Inc., 913 F. Supp.541, 546 (E.D. Mich. 1996), the district court merely acknowledged the *possibility* of mitigation, without finding the defense to be applicable on the facts presented. In fact, the Sixth Circuit does not appear to have addressed this issue directly,[1] but other courts have questioned whether the doctrine of mitigation should apply to ERISA claims. *See, e.g., Schleibaum v. Kmart Corp.*, 153 F.3d 496, 501-502 and n.5 (7th Cir. 1998)(expressing doubt that the doctrine of mitigation would apply, and citing *Iron Workers* for holding that duty to mitigate did *not* apply on facts presented there); *see also generally Moothart v. Bell*, 21 F.3d 1499 (10th Cir. 1994)(doctrine of mitigation does not apply to ERISA's penalty statute where focus is on the plan administrator's actions).

Assuming without deciding that the doctrine of mitigation would apply, it is an affirmative defense on which Defendants bear the burden of proof. Defendants cite *Int'l*

---

[1] On the other hand, the Sixth Circuit has suggested that the doctrine would apply to a class action lawsuit brought by employee-plaintiffs who sought to recover for lost wages, pension rights and insurance benefits under a collective bargaining agreement, pursuant to §301 of the LMRA. *See Schneider v. Elec. Auto-Lite Co.*, 456 F.2d 366 (6th Cir. 1972). Plaintiffs' claims are based both on §301 of the LMRA and on §502 of ERISA.

*Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. Fed. Forge, Inc.*, 583 F. Supp. 1350 (W.D. Mich. 1984), a case in which the district court denied summary judgment based upon the existence of a genuine issue of material fact concerning the issue of mitigation. The court's general discussion of the doctrine is helpful to resolve the issues presented here:

> Damages may not be recovered for a loss which the injured party could have avoided without "*undue* risk, burden or humiliation". However, the claimant may not be precluded from recovery to the extent that he or she has made "*reasonable but unsuccessful* efforts to avoid loss" (emphasis added). *See also, Texaco, Inc. v. Operative P & C Masons International Union*, Local No. 685, 343 F.Supp. 267 (W.D.La.1972), *aff'd*, 472 F.2d 594 (CA 5 1973), *cert. den.*, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973). This duty to mitigate damages is recognized as a fundamental principle of contract law. *See, e.g., Tedford v. Peabody Coal Company*, 383 F.Supp. 787 (N.D.Ala.1974), *rev'd on other grounds*, 533 F.2d 952 (CA 5 1976). The Sixth Circuit has recognized this principle in suits brought under § 301 of the LMRA. *Schneider v. Electric Auto-Lite Company*, 456 F.2d 366, 373 (CA 6 1972).

*Id.*, 583 F. Supp. at 1352-53.

To the extent that the doctrine of mitigation is applicable, Plaintiffs alternatively argue that Defendants have failed to carry their burden to show a failure to mitigate on the record presented. As discussed below, the undersigned agrees.

**1. The Performance Bonds**

Defendant Gerald Miller states in an affidavit that Defendants asked Plaintiffs to make a claim on its performance bonds, based on Defendants' past experience that the performance bonds would willingly remit the installment payments due under the Settlement Agreement. According to Defendants, other (unspecified) multi-employer benefit plans similar to the Local 392 Funds had made similar claims on the performance

bonds, and were successful in obtaining full payment.  However, Plaintiffs refused to make a claim on the performance bond(s), allegedly solely because they had "never done it before" and based on the representation that "was not the way they do business." (Doc. 44-1, Affidavit of Gerald Miller, ¶6).  In January 2013, Plaintiffs ultimately did submit a claim on the performance bonds in the amount of $89,928.93.  However, at that point in time, the surety allegedly declined to pay in full on grounds that Local 392 Funds had waited too long to submit their claim.[2]  (*Id.* at ¶7).

In their reply memorandum, Plaintiffs dispute the applicability of the performance bonds.  Specifically, Plaintiffs have offered evidence that Defendants did not notify them regarding the potential bond claims until April 30, 2012, at a time when Defendants were still current on their financial obligations to Plaintiffs under the Settlement Agreement. (Doc. 46-1, Affidavit of Rinda Hoffman; Doc. 46-2, April 30, 2012 email from defense counsel regarding potential payment from bonds).  Defendants did not default under the Settlement Agreement until Defendants failed to make the installment payments that were due in November and December 2012 under the Settlement Agreement.  By letter dated December 10, 2012, Plaintiffs promptly made a claim against the Performance and Payment Bonds shortly after that default occurred.  (Doc. 46-3, December 10, 2012 letter).

The undersigned agrees that as of April 30, 2012, basic principles of mitigation did not require Plaintiffs to make a claim against the performance bonds, because at that time, no breach of the contractual Settlement Agreement had occurred and no debt was

---

[2]Defendants allege that the surety offered to pay only $10, 812.17, but Plaintiffs assert that they settled their claim with the surety for $15,000.00.   The discrepancy between the alleged offer and the final settlement is not material for the purposes of the pending motion.

owed. Mitigation requires only "reasonable" efforts to avoid loss. Essentially, prior to the time that they breached the Settlement Agreement, Defendants sought to modify the terms of the Settlement Agreement by forcing Plaintiffs to seek payment from another party. But Plaintiffs were entitled to rely upon the Settlement Agreement unless and until such time as Defendants actually breached that Agreement. When that event occurred, Plaintiffs promptly took reasonable action by making a claim against the bonds. To the extent that it applies to Plaintiffs' claims herein,[3] the doctrine of mitigation did not require more.

Plaintiffs' additional argument that Ohio law would have prevented any recovery under the bonds is less persuasive. Plaintiffs suggest that even if they were required to make a claim against the bonds on April 30, 2012, at a time when Defendants had not yet breached the Settlement Agreement, Plaintiffs would not have been able to recover any monies on the Westwood School and Mt. Washington School projects. Pursuant to O.R.C. §153.56, a second or third tier subcontractor must send a notice to the principal contractor before they can perfect a right to receive payment under the bond. Otherwise, they are permitted to collect "only amounts owed for labor and work performed and materials furnished during and after the twenty-one days immediately preceding service of the notice of furnishing." O.R.C. §1311.261. Plaintiffs allege they did not learn where Defendant GM Mechanical was performing its work, or of the existence of the Performance Bond until April 2012, and the sums owed under the Settlement Agreement were for much earlier contributions dating to September through December 2011. Thus,

---

[3]The Court has assumed for purposes of the pending motion that the doctrine of mitigation does apply, absent clear Sixth Circuit authority to the contrary, and in light of the Sixth Circuit's reference to mitigation in *Schneider*.

Plaintiffs assert that Ohio law would have precluded payment for that earlier time period. However, neither party makes clear to the Court whether Defendants did or did not make the required notice to the principal contractor on the project. Therefore, the Court is unable to determine whether this argument has any merit. Be that as it may, Plaintiffs' acknowledgement that they actually received payment in the amount of $15,000.00 from the surety for unpaid contributions "during the months of October, November and December 2011 which were payable under the Settlement Agreement" severely undercuts this contention, even if Defendants failed to provide the required notice. (Doc. 41-6 at ¶4).

Last, Plaintiffs reiterate that most of their claimed damages ($55,312.81) arise from the Maplestreet Station Dining & Residence Hall project. Obviously, Plaintiffs could not recover on bonds for the Westwood School and Mt. Washington School projects for claims relating to work on the entirely separate Maplestreet Station project.

Defendants do not (yet) suggest that Plaintiffs have failed to mitigate their damages for the claim relating to the Maplestreet Station project. By letter dated September 25, 2013, Plaintiffs' counsel made a claim against the separate bond associated with the Maplestreet Station project. (Doc. 46-4). However, Defendants' debt is not reduced since there is nothing in the record concerning the status of that claim.[4]

2. **Assignment of the Union's Payments**

Defendants additionally represent that the Union awarded Defendants subsidies on five separate Equality and Stabilization Program ("E&S") projects. According to

---

[4] To the extent that Plaintiffs are able to recover against this third bond, Defendants would presumably be entitled to an offset or reduction of the debt owed.

Defendants, the Union owes, but has refused to pay to Defendants, the sum of $83,556.74 in subsidies on the referenced five E&S projects. Defendants offered to assign to Plaintiffs that alleged debt owed by the Union to Defendants, as an offset against the sums that Plaintiffs allege are owed by Defendants in this case. However, "Local 392 Funds refused this offer and also refused to assist [Defendants] in getting [the Union] to respect its contractual obligations." (Doc. 44 at 4).

In their reply memorandum, Plaintiffs dispute the proposition that in order to mitigate their damages, Plaintiffs were required to accept an assignment of the E&S subsidies allegedly owed by the Union to Defendants. Importantly, the Union disputes the debt. On September 23, 2013, the Union, represented by the same counsel representing Plaintiffs, filed an answer to the third-party complaint in which the Union both denies many of the central allegations of the third-party complaint that give rise to the alleged debt, and raises four affirmative defense to the alleged debt.[5] (Doc. 45). Plaintiffs argue persuasively that principles of mitigation did not require Plaintiffs to accept the assignment of a contested debt, thereby requiring Plaintiffs to file suit against the Union, and simultaneously to reduce the damages clearly owed by Defendants to Plaintiffs by the sum of $83,556.74.

### III. Conclusion and Recommendation

For the reasons discussed, **IT IS RECOMMENDED THAT** Plaintiffs' motion for summary judgment against Defendants (Doc. 41) be **GRANTED** and that judgment be entered in favor of Plaintiffs in the amount of $102,692.95.

---

[5] The Union was not a party to this lawsuit until Defendants filed a motion for joinder in order to file a third-party complaint against the Union - a motion that this Court granted over Plaintiffs' objection. (Doc. 37).


               <u>*s/Stephanie K. Bowman*</u>
               Stephanie K. Bowman
               United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOARD OF TRUSTEES OF THE
PLUMBERS, PIPEFITTERS &
MECHANICAL EQUIPMENT SERVICE,
LOCAL UNION NO. 392 PENSION FUND, et al.,   Case No. 1:11-cv-502

       Plaintiffs,   Weber, J.
                                       Bowman, M.J.
   v.

GM MECHANICAL, INC., et al.,

       Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.   All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).