**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BOARD OF TRUSTEES OF THE
PLUMBERS, PIPEFITTERS &
MECHANICAL EQUIPMENT SERVICE,
LOCAL UNION NO. 392 PENSION FUND, et al.,          Case No. 1:11-cv-502

                Plaintiffs,          Weber, J.
                                     Bowman, M.J.

       v.

GM MECHANICAL, INC., et al.,

                Defendants.

## REPORT AND RECOMMENDATION

Third-party Defendant, Plumbers, Pipefitters & Mechanical Equipment Service Local Union No. 392 ("the Union") has moved for the entry of summary judgment in favor of the Union and against third-party Plaintiff, GM Mechanical, Inc. ("GM Mechanical"). (Doc. 54). In response, GM Mechanical has filed a cross-motion for summary judgment. (Doc. 57). Both parties have filed responses to the other's motion, with GM Mechanical also filing a reply. (Docs. 58, 61, 62). As with a prior motion filed by Plaintiffs against GM Mechanical, Inc. and the President of that entity, Gerald Miller, [1] the current cross-motions have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. (Doc. 28). For the reasons stated below, I now recommend that the motions of both parties be granted in part and denied in part.

---

[1] On December 6, 2013, the undersigned filed a Report and Recommendation ("R&R") recommending that Plaintiffs' motion be granted, and that judgment be entered in favor of Plaintiffs and against GM Mechanical and Miller in the amount of $102,692.95. (Doc. 49). That R&R and Defendants' objections thereto remain pending before the presiding district judge.

## II. Analysis

### A. Standard of Review

On summary judgment, a court must determine whether there is any genuine issue as to any material fact in dispute. *See* Rule 56(c), Fed. R. Civ. P. In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

### B. Undisputed Background Facts and Prior Report and Recommendation

This ERISA litigation was initiated in July of 2011 by a number of employee benefit funds (hereinafter the "Funds"): the Board of Trustees of the Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 Health & Welfare Fund, the Board of Trustees of the Plumbers, Pipefitters & Mechanical Equipment Service Local Union No. 392 Sub Fund, the Board of Trustees of the Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 Education Trust Fund, and the Board of Trustees of the Cincinnati Plumbing and Pipe Fitting Industry Promotion Trust Fund. The related Plumbers, Pipefitters & MEW, Local Union 392 U.A. (hereinafter "the Union")

was listed as an additional Plaintiff, as the bargaining representative of the Defendant's bargaining unit employees. Defendant GM Mechanical, Inc. ("GM Mechanical") is an employer that agreed to be bound by the provisions of the Collective Bargaining Agreement ("CBA") between the Union and the Mechanical Contractors Association.

In the prior R&R, the undersigned recommended that the Plaintiff Funds' motion for summary judgment be granted, and that judgment be entered in favor of the Plaintiff Funds, and against Defendants GM Mechanical and Gerald Miller, in the amount of $102,692.95. The following undisputed facts were set forth in the prior R&R, but are repeated herein for the convenience of this Court.

> Pursuant to the referenced CBA, GM Mechanical is required to make monthly reports ("Contribution Reports") of hours worked by covered employees, and to pay monthly contributions to certain funds, described categorically as "the Trust Funds," the "Education Fund," and the "Industry Fund" (hereinafter the "Local 392 Funds"). The same CBA states that an employer that fails to submit monthly Contribution Reports and contributions to the referenced Funds on a timely basis is responsible to pay liquidated damages equal to 8% of the unpaid amount, plus reasonable attorney's fees and costs associated with enforcement.

> In March 2012, the two named Defendants herein [including GM Mechanical] both agreed to enter into a Settlement Agreement in order to pay off $89,928.93 in unpaid contributions, liquidated damages, and attorney's fees that all parties agreed were owed by the Defendants to the Plaintiffs in this case. (Doc. 41-5). The Settlement Agreement encompassed payments for the months of September, October, November, and December 2011 on two construction projects known as the Westwood School and Mt. Washington School projects. Through that Settlement Agreement, Miller agreed to be "personally liable for all of the obligations of [GM Mechanical] called for in this Agreement, including all ongoing contributions that shall become due and owing during the duration of this Agreement, liquidated damages, interest, attorney's fees, and audit deficiencies revealed during the duration of [the Settlement Agreement]." (*Id.* at ¶6). Both Defendants agreed to pay off their settlement obligation through twelve monthly installment payments. Through October 2012, Defendants timely submitted payment of the first seven (7) installment

payments. Subsequently, however, they failed to remit the final five (5) payments.

Based on the unpaid five installment payments, as reduced by the sum of $15,000.00 recovered from a separate settlement with the Hudson Insurance Company, Plaintiffs assert that Defendants continue to owe $14,684.44 in contributions, as well as $6,906.59 in liquidated damages, and $2,062.32 in attorney's fees from the breach of the Settlement Agreement.

In addition to their failure to complete the installment payments under the Settlement Agreement, Defendants failed to submit payments of the March, April, May and June 2013 fringe benefit contributions in the aggregate amount of $55,312.81 for labor performed on a third construction project known as the Maple Street Station Dining & Residence Hall at Miami University. Plaintiffs also allege that Defendants' failure to submit timely payment of monthly contributions to the Local 392 Funds has resulted in a total liquidated damages amount of $12,535.68 under the CBA, for the period beginning September 2012 through May 2013. Last, Plaintiffs represent that they have expended $12,192.11 in attorney's fees and costs which are payable under the CBA.

Plaintiffs seek judgment as a matter of law. It is undisputed that the two named Defendants, GM Mechanical, Inc. and Gerald Miller, are bound by both the referenced Settlement Agreement and the Collective Bargaining Agreement, and have breached the terms of those two Agreements. Pursuant to 29 U.S.C. §1132(g)(2), when a Court enters judgment in favor [of] an ERISA plan, the Court shall award:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of –

  (i)    interest on the unpaid contributions, or

  (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law….;

(D) reasonable attorney's fees and costs….; and

(E) such other legal or equitable relief as the court deems appropriate.

*Id.*; *see also Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1990)(stating that the remedies provided by §1132(g)(2), including attorney's fees, are mandatory).

Through June 30, 2013, it is undisputed that the two Defendants owe Plaintiffs the sum of $69,997.25, representing unpaid contributions to the Local 392 Funds. That amount is comprised of $14,684.44 in unpaid contributions under the Settlement Agreement as of July 30, 2013, plus $55,312.81 in unpaid contributions for the months of March, April, May and June 2013.

In addition to the amounts owed in unpaid contributions under the Settlement Agreement and CBA, the Defendants owe liquidated damages in the total amount of $19,441.27, representing an eight percent (8%) assessment of such damages as set forth in both the CBA ($12,535.68) and the Settlement Agreement ($6,905.59). *See Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d at 388 (liquidated damages are also mandatory). Last, Defendants are liable for attorney's fees and costs in the amount of $14, 354.43, comprised of $2,062.32 remaining under the Settlement Agreement, plus $12,192.11 under the CBA as a result of this action.
………….

Critically for the purposes of the pending motion, Defendants do not dispute that they have breached both the CBA and the Settlement Agreement. Further, Defendants do not dispute any of the precise dollar figures calculated by Plaintiffs for the breach of the two Agreements, including the amounts calculated for liquidated damages or attorney's fees.

Instead, Defendants' only argument in opposition is that this Court should not grant Plaintiffs' motion because Plaintiffs failed to mitigate their damages.

(Doc. 49 at 2-5).

In the prior motion for summary judgment filed by the Plaintiff Funds against

Defendants, the parties disputed whether the doctrine of mitigation was applicable.

Arguing that the doctrine applies, Defendants further argued that they were entitled to an

offset of the amount owed to the Plaintiff Funds based upon Defendants' failure to accept

two alternate sources of payment of the damages otherwise owed by Defendants.

Assuming without definitively deciding that the doctrine of mitigation could apply to the ERISA claims in question, the undersigned agreed with Plaintiffs' alternative argument that Defendants had failed to carry their burden to show that Plaintiffs had failed to mitigate their damages. (Doc. 49 at 7). For that reason, the undersigned recommended granting Plaintiffs' motion for summary judgment in full, without reduction or offset of the full amount of damages sought.

## C.  Cross-Motions for Summary Judgment

Earlier in this litigation, Defendants moved for leave to file a third-party complaint against the Union - a motion that the Court granted over objection. (Doc. 37). GM Mechanical filed its third-party complaint against the Union on July 26, 2013. (Doc. 38). The current cross-motions for summary judgment between the Union and GM Mechanical more directly address one of the issues previously raised in the context of GM Mechanical's unsuccessful mitigation defense to the Plaintiff Funds' motion for summary judgment.

### 1.  The E&S Subsidy Debt

In the context of that prior motion, GM Mechanical had argued that the amount that it owed to the Plaintiff Funds should be reduced, or mitigated, by the assignment of a debt allegedly owed by the Union to GM Mechanical. The undersigned previously rejected that argument on grounds that the third party Union contested the underlying debt:

> Defendants additionally represent that the Union awarded Defendants subsidies on five separate Equality and Stabilization Program ("E&S") projects. According to Defendants, the Union owes, but has refused to pay to Defendants, the sum of $83,556.74 in subsidies on the referenced five E&S projects. Defendants offered to assign to [the Plaintiff Funds] that alleged debt owed by the Union to Defendants, as an offset against the sums that Plaintiffs allege are owed by Defendants in this case. However,

"Local 392 Funds refused this offer and also refused to assist [Defendants] in getting [the Union] to respect its contractual obligations." (Doc. 44 at 4).

In their reply memorandum, Plaintiffs dispute the proposition that in order to mitigate their damages, Plaintiffs were required to accept an assignment of the E&S subsidies allegedly owed by the Union to Defendants. *Importantly, the Union disputes the debt.* On September 23, 2013, the Union, represented by the same counsel representing Plaintiffs, filed an answer to the third-party complaint in which the Union both denies many of the central allegations of the third-party complaint that give rise to the alleged debt, and raises four affirmative defense to the alleged debt. (Doc. 45). Plaintiffs argue persuasively that principles of mitigation did not require Plaintiffs to accept the assignment of a *contested* debt, thereby requiring Plaintiffs to file suit against the Union, and simultaneously to reduce the damages clearly owed by Defendants to Plaintiffs by the sum of $83,556.74.

(Doc. 49 at 10-11, footnote omitted, emphasis added).   In sum, the prior R&R reasoned that the amount owed by GM Mechanical to the Funds should not be reduced by the assignment of a disputed E&S debt that the third-party Defendant Union allegedly owed to GM Mechanical. That same disputed E&S debt is now the focus of the pending cross-motions for summary judgment filed between the Union and GM Mechanical.

The E&S program was established by the Union in order to provide "wage subsidies with signatory Contractors on certain projects."   (Article I, Section 2 of the Rules of the E&S Program, Doc. 54-1).   The parties agree that GM Mechanical was a signatory contractor entitled to apply for E&S Program subsidies.   The terms of the E&S Program require certain steps to be completed as part of the application process, including: (1) a separate written application for each project for which a contractor seeks a wage subsidy, (2) notice by the Business Manager of the Union that the project has been approved, and a statement of the number of hours and amount to be subsidized; (3) a Memorandum of Understanding executed by both the contractor and the Union "providing

for a specified hourly wage subsidy and the number of hours previously specified by the Union," and (4) "periodic" wage subsidy payments made by the Union after receipt of work reports by the employer, in accordance with the Memorandum of Understanding.   (*Id*.).

 GM Mechanical submitted multiple applications in 2010 and 2011, seeking E&S wage subsidies for the following five projects:   the Maple Street Station Project at Miami University, the Crosley Tower Project at the University of Cincinnati, the Westwood Project in Cincinnati, the Woodland Project in Cincinnati, and the Mt. Washington Project in Cincinnati.   As discussed below, the parties now agree that E&S subsidies are owed with respect to the three Cincinnati Public Schools projects (Westwood, Woodland, and Mt. Washington).

### 2.   The Union's Motion for Summary Judgment

Notwithstanding a conditional admission that it owes E&S subsidies for the three Cincinnati Public Schools projects, the Union seeks summary judgment in its favor on the issue of the E&S subsidies for the Maple Street Station and Crosley Tower projects, based upon its position that it never signed a Memorandum of Understanding or agreed to pay E&S subsidies for those two projects.

### a.   The Memorandum of Understanding and Payroll Records

The Business Manager for the Union, Keith McCarthy, admits that the Union "agreed, in accordance with the Rules of the E&S Program" that it would "consider awarding money to a contractor that obtained work" on the Maple Street Station and Crosley Tower projects.   (Doc. 61-1 at ¶ 6).   The undersigned assumes that this statement accords with Section 5 of the Rules of the Program, which requires the Business Manager to notify the M.C.A. Representative by telephone and state whether a

target project has been approved for the subsidies, as well as the number of hours and the amount to be subsidized. Section 6 of the Rules explains that after the winning bid for the project is selected, the "successful Contractor and the Union shall then execute a Memorandum of Understanding providing for a specified hourly wage subsidy and the number of hours previously specified by the Union." The subsidies are thereafter to be paid by the Union in "periodic" payments, as calculated:

> from work reports submitted to the Union, by the Employer on said projects. The method of payment shall be established at the beginning of the project, and shall be included in the "Memorandum of Understanding."

(Doc. 54-1 at Section 7).

The Union first argues that it cannot be held liable for the E&S subsidies because there was never a "meeting of the minds" or formal contractual agreement that the E&S subsidies would be paid for the Maple Street Station and Crosley Tower Projects. As referenced above, the written Rules of the E&S Program specifically require execution of a Memorandum of Understanding between the parties after the project is awarded to a successful contract bidder. The Union points out that GM Mechanical has not – and cannot - produce a signed copy of a Memorandum of Understanding for either of the disputed projects. GM Mechanical attached *unsigned* copies of a Memorandum of Understanding to its cross-motion for summary judgment, but does not contest the Union's assertion that no signed copies exist for the two projects.[2]

Although mutual assent may be inferred by course of conduct, the Union denies that its assent can be inferred for the two projects in question, because neither party acted

---

[2] The President of GM Mechanical attests that he executed and returned the Memorandum of Understanding as to the three Cincinnati Public School projects, and the parties clearly agree that E&S subsidies are owed for the three Cincinnati Public School projects. (Doc. 57-1 at ¶10).

as if E&S subsidies were owed.  For example, although GM Mechanical sent weekly payroll records as required for the three Cincinnati Public School projects, it never sent any similar payroll records to the Union for the Maple Street Station or Crosley Tower projects.  And, unlike the Cincinnati Public School projects, the Union never paid out any E&S subsidies at any point for the Maple Street Station and Crosley Tower projects.

Emphasizing the same point, the Union argues that GM Mechanical had a contractual obligation under the E&S program to send those payroll records, since the Rules of the E&S Program expressly require payments to be "calculated from work reports submitted to the Union" by the contractor, with the "method of payment [to] be established at the beginning of the project, and ….included in the 'Memorandum of Understanding.'"  (Exhibit 54-1, Sec. 7 of the Rules of the E&S Program).

The undersigned concludes that no genuine issue of material fact exists concerning whether the Union agreed to pay E&S subsidy funds to GM Mechanical on the Maple Street Station and Crosley Tower projects.  Clearly it did not.  The Union is therefore entitled to summary judgment as to that issue. The President of GM Mechanical, Gerald Miller, admits that he executed and returned a Memorandum of Understanding only as to the three Cincinnati Public School projects.  (Doc. 57-1, Affidavit of Gerald Miller at ¶10).  He makes no claim that he executed and returned a similar document for the Maple Street Station or Crosley Tower projects.  Likewise, Keith McCarthy expressly denies the Union's receipt of an executed Memorandum of Understanding from GM Mechanical concerning the Maple Street Station and Crosley Tower projects.  (Doc. 61-1 at ¶9).  McCarthy further attests that the Union never

informed GM Mechanical that it was entitled to receive any E&S funds for those two projects.

### b. Unclean Hands

Although no E&S program funds are due as to the Maple Street Station and Crosley Tower projects, funds are owed by the Union for the three Cincinnati Public School projects. As an alternate defense to any contractual obligation to pay any E&S funds (including for the Cincinnati Public Schools projects), the Union argues that it was relieved of any obligation to pay based upon GM Mechanical's "unclean hands." The Union argues that GM Mechanical wrongly "refused to pay the Fringe Benefit Funds contractually required contributions for the same time period that it now seeks E&S monies." (Doc. 54 at 10-11). In other words, the Union argues that it was legally justified in stopping payment of E&S subsidies for the three Cincinnati Public School projects on which subsides were admittedly owed, because GM Mechanical was not paying into the Funds as it was required to do. McCarthy reasons that the Union, "as a joint sponsor of the Trust Funds, would never agree to pay any money directly to an employer while that employer owed money to the Union sponsored Trust Funds." (Doc. 61-1 at ¶12).

The undersigned does not find the Union's "unclean hands" defense to payment of E&S funds to be persuasive. Under contract law, the doctrine generally applies only to the same parties – here, the Union and GM Mechanical – and not to conduct involving third parties like the Funds. There is nothing in the Rules for the E&S Program that suggests that the Union retains the discretion to withhold contractually agreed-upon E&S subsidy payments under the circumstances presented. Although the Rules provide that

the parties' Memorandum of Understanding should set out the "method" of "periodic" payments in a manner consistent with the total number of hours and subsidies previously agreed upon, the various Memoranda of Understanding relating to the Cincinnati School Projects do not appear to set forth those details. However, the parties agree that in practice, GM Mechanical would submit hourly reports to the Union on a weekly basis for the Cincinnati Public Schools projects, and in turn, the Union would pay E&S subsidy money to GM Mechanical the following month. (Doc. 57-1 at ¶11). Neither the Memoranda of Understanding, the Rules of the E&S program, nor the parties' established course of conduct, suggests that the parties ever agreed to additional conditions, such as a condition that GM Mechanical be fully paid up on its separate obligation to the Funds prior to the Union's payment.

While the Union concedes the existence of case law that the unclean hands doctrine applies only between the same parties, the Union makes a general argument that the doctrine still should support its defense to payment, to the extent that the members of the Union were directly harmed by GM Mechanical's non-payment to the Funds. The Union's argument is in essence one based on policy considerations and equitable principles. The Union argues that "if the union contractor is not paying contractually required benefits to the Union Trust Funds on behalf of its employees," then the purpose of the E&S subsidy program – to subsidize union contractors – is frustrated. (Doc. 61 at 10). Anticipating that this Court may yet require payment of some E&S funds that it now represents it always intended to pay, the Union suggests that "any E&S monies owed to GM Mechanical should be paid directly to the Trust Funds to satisfy [GM Mechanical's] delinquencies." (*Id.*).

### c. Laches

As a final argument for entry of judgment in its favor concerning the two disputed projects, the Union asserts the defense of laches. The Union argues that the application for the Maple Street Station project was submitted in December 2011, with the work allegedly to begin on January 15, 2012. The application for the Crosley Tower project was submitted in November 2011 with the work also to start on January 15, 2012. The Union argues that by waiting for more than a year and a half to file suit against the Union for its alleged failure to pay E&S subsidies, GM Mechanical has delayed too long. The Union argues that it had no basis to know that GM Mechanical believed itself to be entitled to the E&S subsidies, and that it will be "severely" prejudiced if forced to pay the subsidies now, because it is no longer possible for the Union to verify the number of hours allegedly worked by GM Mechnical's bargaining unit employees.

The undersigned finds no need to reach the Union's laches argument, having already concluded that there was no agreement by the Union to pay E&S subsidies to GM Mechanical for the Maple Street Station or Crosley Tower projects. To the extent that any reviewing court would find need to reach the argument, the undersigned alternatively finds the Union's prejudice argument to be unpersuasive. *See Wuliger v. Cannella Response Television, Inc.*, 865 F. Supp.2d 836, 848 (S.D. Ohio 2011)(a defendant asserting a defense of laches in a suit filed before the expiration of the statute of limitations must make a strong showing of prejudice).

### 3. GM Mechanical's Cross-Motion for Summary Judgment

GM Mechanical's cross-motion seeks summary judgment in its favor, arguing first that the Union owes E&S subsidies for all five projects. For the reasons previously

13

stated, the undersigned finds no evidence to support the existence of any agreement or Memorandum of Understanding that would have created an obligation to pay E&S subsidies for the Maple Street Station or Crosley Tower projects.

GM Mechanical alternatively seeks partial summary judgment with respect to the amount of E&S program money owed for the three Cincinnati Public School projects.  I agree that judgment should be entered in favor of GM Mechanical, to the extent that the Union clearly owes E&S subsidies for those projects.

Nevertheless, even GM Mechanical's alternative request for relief cannot be granted in full, because GM Mechanical seeks judgment not merely for $38,314.50, the amount that both parties agree was owed in E&S funds under the parties' prior agreement, but for a substantially higher figure based upon damages allegedly caused by the Union's breach of its contractual obligation.   GM Mechanical also invites the undersigned to reconsider her prior Report and Recommendation denying an offset of the amount GM Mechanical owes to the Plaintiff Funds, renewing its argument that the Funds should have accepted an assignment of the E&S debt owed by the Union to GM Mechanical.

As GM Mechanical notes, the Union and the Funds are represented by the same counsel.   In defending against GM Mechanical's mitigation argument in the context of the prior motion, counsel previously argued that the entire E&S debt was "contested" by the Union, an argument that the undersigned accepted in ruling in favor of the Plaintiff Funds on the mitigation issue.   Yet, the Union now concedes that it owes E&S subsidies for the three Cincinnati Public School projects.   Specifically, the Union's business agent, Jim Higgins, states:   "The Union agrees that it owes GM Mechanical $38,314.50 for work

14

performed on the Westwood and Woodford projects and one other Cincinnati Public School project." (Doc. 1-2, Affidavit of Higgins, ¶6). GM Mechanical seeks sanctions based upon the prior "false representations" by the Union and the Funds to this Court concerning "the status of the debt." (Doc. 57 at 9-10).

In addition to the $38,314.50 for the three Cincinnati Public School projects, GM Mechanical seeks payment of interest dating back to April of 2011, plus an additional amount representing "the amount of damages GM had to pay the Local 392 Funds." (Doc. 57 at 11). Based upon the general principle that a party who breaches a contract is liable for all damages that "proximately result from" the breach, GM Mechanical argues that the Union should be required to pay the full sum that the undersigned found that GM Mechanical owes to the Funds, namely, $102,692.95. (Doc. 49, R&R at 11). GM Mechanical contends that it never would have fallen behind on its own payments to the Funds if the Union had paid GM Mechanical the E&S Program money when it was due, and/or when GM Mechanical requested it. GM Mechanical suggests in a footnote that the Union and the Funds "acted in concert when [the Union] refused to pay the E&S Program money to GM [Mechnical] for the sole purpose of increasing the amount of liquidated damages and attorney's fees that [the Funds] could extract from GM [Mechanical]." (Doc. 57 at 8, n.1).

The undersigned rejects GM Mechanical's arguments on this issue. The doctrine of proximate causation requires a more direct causal link. Regardless of GM Mechanical's current regrets, the fact remains that it previously entered into a valid Settlement Agreement with the Funds that did not include an offset for the E&S program funds then in dispute. On the record presented, GM Mechanical cannot shift full liability

for its breach of that Settlement Agreement, or for its subsequent failure to keep current on its obligation to the Funds, back to the Union. Although the Union eventually offered to pay the $38,314.50 in E&S program money that it owed directly to the Funds as part of an additional settlement, that proposal was not made until November 2013. Until that time, the amount of E&S funds owed by the Union was greatly disputed. Indeed, the total amount of E&S funds continues to be disputed, as reflected in the current cross-motions for summary judgment. Until the filing of the present cross-motions,[3] there was no clear agreement even as to the $38,314.50 owed for the three Cincinnati Public School projects.

Because of that ongoing disagreement, there is no basis to re-examine the conclusion in the prior R&R that GM Mechanical failed to carry its burden of proof <u>at that time</u> to show that the Funds failed to mitigate its damages, by failing to accept assignment of the E&S money allegedly owed by the Union to GM Mechanical. While GM Mechanical may question the prior representations of counsel that "the Union never agreed that *any* money was owed to the Defendants in the first place," (Doc. 46, emphasis added), the statement was not technically false when made. In its answer to the third-party complaint, the Union asserted a multitude of affirmative defenses to payment of *any* E&S funds, including a defense that GM Mechanical was not entitled to *any* payment based upon its failure to pay the Funds, as well as a defense that the Union retains full "discretion" on whether it must pay the E&S funds. (Doc. 45 at 5). Only in the context of the most recent cross-motions did the Union finally admit – and GM

_____

[3]Counsel's November 2013 letter sets forth the Union's calculation of the amount as $38,314.50, but there is no evidence that GM Mechanical ever agreed to that calculation until it filed its cross-motion on March 21, 2014. McCarthy attests that "GM Mechanical demanded additional amounts over and above the $38,314.50." (Doc. 61-1 at ¶14).

Mechanical agree – that the Union owes $38,314.50 for the three Cincinnati Public School projects.[4]

Both in support of GM Mechanical's cross-motion for increased damages, and in its opposition to the Union's "unclean hands" defense, GM asserts that the Union exhibited bad faith when it refused to pay to GM Mechanical the E&S subsidies that were owed on the three Cincinnati Public Schools projects. The Union cited as the sole reason for its non-payment the fact that GM Mechanical was delinquent in its contributions to the entirely separate Funds. While the undersigned agrees that the Union breached a contractual obligation to continue paying E&S program funds for the Cincinnati Public Schools projects at this stage, GM Mechanical has not proven bad faith, or the absence of any current dispute concerning damages in excess of $38,314.50, such that it would be entitled to judgment for a larger amount as a matter of law.

GM Mechanical's position is that the Union's conduct caused (and was designed to cause) GM Mechanical to fall further behind in its payments, thereby causing the Funds to incur larger damages and interest than they otherwise would have incurred. GM Mechanical asserts that in August of 2011, the Union refused to pay "E&S Program money" that was owed.[5] In January, 2012, GM Mechanical proposed that the Union pay the E&S money over to the Funds in order to help satisfy the debt owed by GM Mechanical to the Funds. Miller suggests that GM Mechanical only reluctantly entered into a Settlement Agreement with the Funds in March of 2012 that did not include an

_____

[4]Even in the context of the pending cross-motions, the Union continues to argue (albeit unpersuasively) that it has a complete defense to payment of its debt.
[5]Because GM Mechanical maintains (incorrectly) that E&S money is owed for the two disputed projects, and not merely for the three Cincinnati Public School projects, GM Mechanical fails to draw any distinction in its briefs before this Court, or in the affidavit of its President, between the E&S subsidies allegedly owed for the three school projects and the E&S subsidies allegedly owed for the two disputed projects.

offset of the disputed E&S program money, after being threatened with a lawsuit by the Funds and a strike by the Union.   (Doc. 57 at ¶¶16, 20).   However, it is not the function of this Court to rewrite the terms of the prior valid Settlement Agreement between GM Mechanical and the Funds, or to examine the motivations of the parties when they entered into that Agreement.

GM Mechanical made seven payments to the Funds under the March 2012 Settlement Agreement before becoming delinquent on its payments.   Sometime after GM Mechanical became delinquent, on or about December 2012[6] at a time that Miller alleges that GM Mechanical had been "awarded E&S Program money" for the two disputed projects,[7] Miller attests that "Mr. McCarthy informed me that Local 392 would not pay GM any E&S Project money" for the Maple Street Station and Crosley Tower projects.   (Doc. 57-1 at ¶27).   Miller admits that GM Mechanical did not submit weekly wage reports to the Union as required for receipt of E&S subsidy money, although he characterizes the omission as a deliberate choice not to engage in a "waste of time" given the Union's stated position that it would not pay E&S program money for the two projects. (*Id.*).   Although GM Mechanical attempts to characterize the Union's refusal to pay E&S subsidies for the two disputed projects as an "anticipatory breach" that excused GM Mechanical's own failure to submit weekly wage reports, the undersigned has already concluded that there was no agreement between the parties for E&S program money to be paid for the Maple Street Station and Crosley Tower projects.   Thus, no increase in damages can be said to have accrued to GM Mechanical as a result of the Union's failure

---

[6] *See* Doc. 62, Reply Memorandum at 4.
[7] As discussed, despite this reference, Miller admits that he did not execute a Memorandum of Understanding for those projects, and there is no evidence to support his assertion that the Union ever agreed to pay E&S program money for those projects.

to pay E&S subsidies for those two projects.   At this time, disputed issues of material fact preclude judgment in GM Mechanical's failure for any amount in excess of $38,140.50.

### III.   Conclusion and Recommendation

For the reasons discussed, the undersigned concludes that an agreement existed under which the Union became contractually obligated to pay GM Mechanical E&S program money for the three Cincinnati Public School projects, but not for the two disputed projects.   The undersigned rejects the Union's position that it was relieved of its contractual obligation to continue paying E&S subsidies by GM Mechanical's failure to keep current on its payments to the Funds.   Therefore, judgment should be entered partially in favor of the Union, to the extent that no E&S subsidies are owed for the Maple Street Station or Crosley Tower projects, and partially in favor of GM Mechanical, to the extent that the Union owes GM Mechanical $38,314.50 in E&S subsidies for the Cincinnati Public School projects.   No additional conclusions can be drawn at the summary judgment stage, including but not limited to the issue of whether the Union owes any additional damages (whether in interest, or if GM Mechanical is able to prove proximate causation for additional damages at trial).

The undersigned rejects GM Mechanical's invitation to reconsider the conclusions of the prior R&R, to the extent that those recommendations were valid at the time that they were filed.   However, based on the Union's newly expressed position that it is now willing to pay $38,314.50 to the Funds, GM Mechanical's consistent position that the Funds should be required to accept payment from the Union, and the conclusion of this R&R that the sum of $38,314.50 is no longer a contested debt, the Court should exercise its equitable powers to require the Union to pay that amount to the Funds in partial

satisfaction of the amount previously found to be owed by GM Mechanical and Miller to the Funds.

Thus, **IT IS RECOMMENDED THAT** the cross-motions for summary judgment filed by both the Union and GM Mechanical (Docs. 54, 57) be **GRANTED in part** and **DENIED in part** as stated.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


BOARD OF TRUSTEES OF THE
PLUMBERS, PIPEFITTERS &
MECHANICAL EQUIPMENT SERVICE,
LOCAL UNION NO. 392 PENSION FUND, et al.,          Case No. 1:11-cv-502

               Plaintiffs,          Weber, J.
                                    Bowman, M.J.

      v.

GM MECHANICAL, INC., et al.,

               Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make

objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).